**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

JOSEPH LEO JOHNSON,

        Petitioner,

vs.

JOHN FAYRAM,

        Respondent.

No. 14-CV-00040-LRR

**ORDER**

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

    A.   *Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    B.   *Direct Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    C.   *State Post-Conviction Relief Proceedings* . . . . . . . . . . . . . . . **4**
    D.   *Federal Habeas Corpus Action* . . . . . . . . . . . . . . . . . . . . . **6**

III.   **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

IV.   **STANDARDS OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

    A.   *Requirements under 28 U.S.C. § 2254(d)* . . . . . . . . . . . . . . . . **8**
    B.   *Exhaustion and Procedural Default* . . . . . . . . . . . . . . . . . . **11**

V.    **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

    A.   *Ineffective Assistance of Counsel Claims* . . . . . . . . . . . . . . . **14**

        1.   *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
        2.   *Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
            a.   *Failure to object to prosecutorial misconduct* . . . . . . . **16**
            b.   *Failure to pursue a justification defense* . . . . . . . . . . **19**
            c.   *Failure to make a sufficiently specific motion*
               *for judgment of acquittal* . . . . . . . . . . . . . . . . . . . **23**

    B.   *Due Process Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

        1.   *Overruling of hearsay objection* . . . . . . . . . . . . . . . . . **24**

     2.    *"Dangerous weapon" jury instructions* . . . . . . . . . . . . . . . 26

VI. **CERTIFICATE OF APPEALABILITY** . . . . . . . . . . . . . . . . . . . . . . . . 29

VII. **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## I. INTRODUCTION

The matter before the court is the "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus" ("petition") (docket no. 1), which Joseph Leo Johnson ("the petitioner") filed on March 27, 2014.

## II. PROCEDURAL BACKGROUND

### A. Conviction

On September 20, 2007, a jury found the petitioner guilty of first degree murder in violation of Iowa Code section 707.2. *See* App'x, Order Accepting Verdict (docket no. 10-11) at 83. On November 29, 2007, the Iowa District Court for Black Hawk County ("Iowa District Court") sentenced the petitioner to life imprisonment without the possibility of parole. *See* App'x, Judgment and Sentence (docket no. 10-11) at 84.

### B. Direct Appeal

On December 5, 2007, the petitioner appealed his conviction on four bases: (1) the Iowa District Court erred in submitting the issue of his guilt to the jury, (2) the jury returned a verdict against the weight of the evidence, (3) the Iowa District Court erred in admitting hearsay and (4) trial counsel failed to request certain jury instructions. *See* App'x, Petitioner's Direct Appeal Brief (docket no. 10-4). Additionally, the petitioner filed a pro se brief. *See* App'x, Petitioner's Pro Se Direct Appeal Brief (docket no. 10-5). In such brief, the petitioner generally asserted that insufficient evidence of his guilt existed and trial counsel should have informed the Iowa District Court that he did not possess a dangerous weapon. *Id*. at 8-13. However, the petitioner requested that the Iowa Court of Appeals reserve his second pro se claim for post-conviction proceedings. *Id*. at 13.

On January 22, 2010, the Iowa Court of Appeals affirmed the petitioner's conviction and sentence. *See* App'x, Direct Appeal Opinion (docket no. 10-7); *see also State v. Johnson*, 779 N.W.2d 494 (Table), 2010 WL 200048 (Iowa Ct. App. Jan. 22, 2010). The Iowa Court of Appeals found that the petitioner's trial counsel made an overly general motion for judgment of acquittal and, as a result, error was not preserved. *See* App'x, Direct Appeal Opinion (docket no. 10-7) at 3.

Because trial counsel failed to preserve the sufficiency of the evidence error, the Iowa Court of Appeals analyzed such error under the rubric of ineffective assistance of counsel. *Id.* at 3-4. Under that standard, the Iowa Court of Appeals found that there was sufficient evidence for the jury to conclude that the petitioner had the requisite mens rea for a conviction of first degree murder. *Id.* at 4-5. As a result, the Iowa Court of Appeals concluded that the petitioner's trial counsel did not breach an essential duty when he failed to challenge the sufficiency of the evidence. *Id.* Although the Iowa Court of Appeals did not specifically address the petitioner's pro se arguments regarding the use of a dangerous weapon, it appears that the Iowa Court of Appeals implicitly rejected them when it determined that there was sufficient evidence in the record for the jury to find that the petitioner possessed the requisite mens rea. *Id.*

Aside from rejecting the petitioner's arguments concerning the sufficiency of the evidence, the Iowa Court of Appeals rejected the petitioner's arguments regarding (1) the weight of the evidence, including that the State's failure to present DNA or fingerprint evidence required retrial, and (2) the admission of hearsay. *Id.* at 6-9. Regarding the latter argument, the Iowa Court of Appeals concluded that the admission of the statements that the petitioner identified as improper hearsay was harmless because either the admission of the statements was cumulative of other evidence or the Iowa District Court gave a curative instruction. *Id.*

Lastly, the Iowa Court of Appeals declined to rule on the ineffective assistance of counsel claim concerning the failure to request certain jury instructions but preserved the

issue for post-conviction review. *Id.* at 9. It did not specifically address the petitioner's pro se argument regarding trial counsel's failure to assert the lack of evidence concerning the use of a dangerous weapon. *Id.*

On January 22, 2010, the petitioner submitted an application for further review. *See* App'x, Direct Appeal Application for Further Review (docket no. 10-8). The application asserted that: (1) the Iowa District Court erred in denying the motion for judgment of acquittal, (2) the Iowa District Court erred in admitting hearsay evidence and (3) trial counsel unconstitutionally failed to request a corroboration/some evidence aside from confession jury instruction and a self-defense/justification jury instruction. *Id.* at 13-28. On March 16, 2010, the Iowa Supreme Court denied the petitioner's application for further review. *See* App'x, Order Denying Further Review (docket no. 10-9). Procedendo issued on March 24, 2010. *See* App'x, Procedendo (docket no. 10-11) at 96.

## C. State Post-Conviction Relief Proceedings

On February 23, 2011, the petitioner applied for post-conviction relief in the Iowa District Court based on four ineffective assistance of trial counsel claims: (1) failure to request a jury instruction that addressed corroboration of the petitioner's self-incriminating statements, (2) failure to request a jury instruction that addressed self-defense, (3) failure to properly move for judgment of acquittal on the basis that insufficient evidence supported the conclusion that he stabbed the victim and (4) failure to adequately present available evidence to support a theory of self-defense and prepare the petitioner to testify on the issue of self-defense. *See* App'x, Application for Post-Conviction Relief (docket no. 10-11) at 98-101, 106; App'x, Order Denying Post-Conviction Relief (docket no. 10-11) at 128-30. On May 8, 2012, the Iowa District Court denied post-conviction relief. *See* App'x, Order Denying Post-Conviction Relief (docket no. 10-11) at 128-30.

On May 18, 2012, the petitioner appealed the denial of post-conviction relief; he raised the following ineffective assistance of trial counsel claims: (1) failure to object to prosecutorial misconduct, (2) failure to pursue a justification defense and (3) failure to

move for judgment of acquittal on the ground that the State failed to prove the petitioner caused the victim's death. *See* App'x, Petitioner's Post-Conviction Appeal Brief (docket no. 10-12). In addition to briefing by the State and further briefing by the petitioner's appellate counsel, *see* App'x, State's Post-Conviction Appeal Brief (docket no. 10-13); Petitioner's Post-Conviction Appeal Reply Brief (docket no. 10-14), the petitioner filed a pro se reply brief in which he argued that: (1) trial counsel was ineffective for failing to make a sufficiently specific motion for judgment of acquittal based on the lack of evidence showing he caused the victim's fatal injury, (2) trial counsel should have objected to the jury instructions and (3) the Iowa District Court misinstructed the jury during trial and misapplied the law during post-conviction proceedings. *See* App'x, Petitioner's Post-Conviction Pro Se Appeal Brief (docket no. 10-15).

On December 5, 2013, the Iowa Court of Appeals affirmed the denial of post-conviction relief. *See* App'x, Post-Conviction Relief Appeal Opinion (docket no 10-16); *see also Johnson v. State*, 842 N.W.2d 679 (Table), 2013 WL 6405158 (Iowa Ct. App. Dec. 5, 2013). With regard to the petitioner's argument that trial counsel unconstitutionally failed to object to prosecutorial misconduct, the Iowa Court of Appeals held that the statements in question were not misconduct, which meant trial counsel had no duty to object to them. *See* App'x, Post-Conviction Relief Appeal Opinion (docket no 10-16) at 6-7. Concerning the petitioner's argument that trial counsel unconstitutionally failed to pursue a justification defense, the Iowa Court of Appeals held that trial counsel had not breached an essential duty because the petitioner insisted that he had not stabbed the victim. *Id.* at 7-8. The Iowa Court of Appeals stressed that, because a self-defense argument is premised on admitting to killing but asserting a justification for that killing, failure to pursue a justification defense during trial was a reasonable tactical decision by trial counsel. *Id.* The Iowa Court of Appeals also rejected the petitioner's claim that trial counsel unconstitutionally failed to move for judgment of acquittal based on causation. *Id.*

at 8. It emphasized that sufficient evidence allowed the jury to find that the petitioner caused the victim's death. *Id.*

Aside from addressing the arguments that appellate counsel raised, the Iowa Court of Appeals addressed the petitioner's pro se arguments. *Id.* at 9. It found that the Iowa District Court properly instructed the jury and did not misapply the *Strickland* standard when it denied post-conviction relief. *Id.* Moreover, the Iowa Court of Appeals further "[found] the record shows [the petitioner] received a fair trial within the meaning of the law." *Id.*

The petitioner submitted an application for further review. *See* App'x, Post-Convction Relief Application for Further Review (docket no. 10-17). In such application, the petitioner asserted two claims: (1) ineffective assistance of trial counsel for failing to object to prosecutorial misconduct and (2) ineffective assistance of trial counsel for failing to pursue a justification defense. *Id.* at 13-23. On January 31, 2014, the Iowa Supreme Court denied further review. *See* App'x, Order Denying Further Review (docket no. 10-18).

### D. *Federal Habeas Corpus Action*

In the petition, the petitioner asserts five claims for relief under 28 U.S.C. § 2254: (1) ineffective assistance of trial counsel for failure to object to prosecutorial misconduct, (2) ineffective assistance of trial counsel for failure to pursue a justification defense, (3) ineffective assistance of trial counsel for failure to make a sufficiently specific motion for judgment of acquittal, (4) due process violation stemming from improper admission of hearsay evidence at trial and (5) due process violation based on the dangerous weapon jury instructions. *See* Petition (docket no. 1); *see also* Petitioner's Brief (docket no. 15) at 16-17. On June 17, 2014, John Fayram ("the respondent") filed an answer in which he argued that all of the petitioner's claims are either barred, procedurally defaulted or without merit. *See* Answer (docket no. 7). On October 21, 2014, the petitioner filed a brief in support of the petition (docket no. 15). On November 14, 2014, the respondent

filed a merits brief (docket no. 16).  On December 29, 2014, the petitioner filed a reply brief (docket no. 20).  The matter is fully submitted and ready for decision.

## III.  FACTUAL BACKGROUND

The Iowa Court of Appeals summarized the facts during the petitioner's direct appeal:

> [The petitioner] and his friends attended a birthday party.  As they were leaving, [the petitioner] heard someone shout a racially derogatory term. . . .
>
> The [petitioner] was "[v]ery upset" at the use of a racial slur and confronted the person he thought had used the slur.  He then left the party.  According to a friend, [the petitioner] was still "pretty mad" and "he wanted to confront them about [the racial slur] and possibly fight them."
>
> [After leaving the party, the petitioner went to] his friend's house, went in for a minute or two, and returned to his friend's car with knives.  [The petitioner] convinced his friends to return to the party.  They agreed, but, on discovering the knives, advised him to leave them in the car.  [The petitioner] did so, but retained a pocket knife . . . .
>
> At this point, [the petitioner] got into an argument with two individuals.  [Treye] Blythe, who was in the vicinity [but was not the individual who used the racial slur], attempted to break up the confrontation.  [The petitioner] took a step back from Blythe, reached into his pocket in an apparent attempt to retrieve something, and made a punching motion towards Blythe's chest.  Blythe fell to the ground immediately . . . .
>
> [Blythe] subsequently died of a stab wound to the chest.  [After the stabbing, the petitioner] left the scene.  He gave a knife to a friend, who disposed of it in a storm sewer.  Several people observed a substantial amount of blood on [the petitioner's] clothes.

App'x, Direct Appeal Opinion (docket no. 10-7) at 2, 4-5.  In the days following the incident, the petitioner told several people that he committed the stabbing, including a

police officer with whom he was acquainted. *See* App'x, Trial Transcript (docket no. 10-3) at 147, 148-49, 152, 154.

Before trial, the petitioner filed a notice of intent to assert justification as a defense; however, trial counsel withdrew the notice of self-defense before trial. *See* App'x, Withdrawal of Notice of Self-Defense (docket no. 10-1) at 9. At trial, the petitioner relied primarily on a general denial defense, arguing that he did not commit the crime. *See* App'x, Trial Transcript (docket no. 10-3) at 154. Although the petitioner admitted to making incriminating statements, he asserted that his statements were untrue and were merely the result of confusion and suggestions by the petitioner's friends that the petitioner was the killer. *See* App'x, Trial Transcript (docket no. 10-3) at 147, 148-49, 152, 154.

## IV. STANDARDS OF REVIEW

### A. Requirements under 28 U.S.C. § 2254(d)

The United States Code provides the standard for habeas corpus review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact . . . ." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of legal error are governed by § 2254(d)(1), and claims of factual error fall within § 2254(d)(2). *See id.* at 1029-30.

Regarding an erroneous decision of law under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring); *see also Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (stating that "only limited and deferential review of underlying state court decisions" is available in habeas corpus cases (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004)) (internal quotation marks omitted)). Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412 (O'Connor, J., concurring).

An "unreasonable application" of Supreme Court precedent can arise in one of two ways. The Supreme Court has stated that:

> First, a state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [the] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407 (O'Connor, J., concurring). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407-08. Furthermore,

[u]nder [28 U.S.C.] § 2254(d)(1)'s "unreasonable application" clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*.

*Id.* at 411 (O'Connor, J., concurring) (emphasis added). The Eighth Circuit Court of Appeals has provided the following standard for an unreasonable application of law: "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999) (alteration in original) (quoting *Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir. 1999)).

Applying these standards to the present case, the court must determine whether: (1) the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law; or (2) the Iowa courts correctly identified the applicable principles of federal law but then unreasonably applied that law to the facts in the case. *See, e.g.*, *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (discussing the applicable standard); *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Newman v. Hopkins*, 247 F.3d 848, 850–52 (8th Cir. 2001) (same); *Weaver*, 241 F.3d at 1029-30 (same), *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000) (same).

"Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); 28 [U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact." *Weaver*, 241 F.3d at 1030. Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Forsyth v. Ault*, 537 F.3d 887, 890 (8th Cir. 2008) (stating that the petitioner bears "the burden of rebutting the presumption of correctness" (quoting 28 U.S.C. § 2254(e)(1)); *Weaver*, 241 F.3d at 1030 ("[O]n habeas review, we accord state trial courts

broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030; *see also Forsyth*, 537 F.3d at 890 ("Thus, the state court's decision must be objectively unreasonable, and not merely incorrect, for us to grant the writ.").

## B. Exhaustion and Procedural Default

A petitioner must exhaust all available state court remedies before obtaining federal habeas corpus review. *See* 28 U.S.C. § 2254(b)(1)(A). To fulfill the exhaustion requirement, a petitioner must provide the highest state court with a full and fair opportunity to consider all of the claims before presenting them to a federal court. *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997); *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991); *see also* 28 U.S.C. § 2254(c). This requires a petitioner to invoke "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Iowa, a "prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts." *Welch v. Lund*, 616 F.3d 756, 759 (8th Cir. 2010); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (reiterating that a petitioner "must 'fairly present' his claim in each appropriate state court [including a state supreme court with powers of discretionary review], thereby alerting that court to the federal nature of the claim"); *Boerckel*, 526 U.S. at 845-48 (concluding that the exhaustion doctrine requires a petitioner to seek discretionary review from the state's supreme court when that review is part of the state's ordinary appellate review procedure).

The exhaustion requirement compels a petitioner to "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" at the state court in order to subsequently raise the claims on federal habeas review. *Ashker*, 5 F.3d at 1179 (quoting *Kelley v. Trickey*, 844 F.2d 557, 558 (8th Cir. 1988)) (internal quotation marks omitted). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus petition have been properly raised in the prisoner's state court proceedings. *See Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir. 1995); *Flieger v. Delo*, 16 F.3d 878, 884-85 (8th Cir. 1994); *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

A petitioner who has procedurally defaulted his or her federal claims by fail[ing to meet a state procedural requirement has not exhausted the federal claims as required for purposes of federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). Although a "petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him," federal courts will not consider the claims because the state procedural rules dispose of such claims on independent and adequate state grounds. *See id.* at 732.

A petitioner may have a procedurally defaulted claim reviewed in federal court only if he or she "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice." *Id.* at 750; *see also Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002); *Hatcher v. Hopkins*, 256 F.3d 761, 763 (8th Cir. 2001); *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 985 (8th Cir. 1992); *Buckley v. Lockhart*, 892 F.2d 715, 718 (8th Cir. 1989). "The rule that certain state-court procedural defaults will bar a petition for federal habeas corpus extends to procedural defaults occurring in the course of state post-conviction proceedings, as well as to procedural defaults occurring at trial or on direct appeal in the state courts." *Kilmartin v. Kemna*, 253 F.3d 1087, 1087 (8th Cir. 2001) (quoting *Williams v. Lockhart*, 873 F.2d 1129, 1130 (8th Cir. 1989)).

## V. DISCUSSION

The petitioner asserts five claims for relief under 28 U.S.C. § 2254. Three of the petitioner's claims allege ineffective assistance of trial counsel and two of the petitioner's claims allege violations of the petitioner's due process rights. *See generally* Petition (docket no. 1); Petitioner's Brief (docket no. 15). The petitioner asserts that trial counsel: (1) failed to object to prosecutorial misconduct, (2) failed to pursue a justification defense, that is, trial counsel withdrew his notice of self-defense and did not prepare him to testify in accordance with a self-defense theory, and (3) failed to make a sufficiently specific motion for judgment of acquittal. *Id.* Additionally, the petitioner argues that his due process rights were violated during trial when (1) the Iowa District Court improperly admitted hearsay evidence and (2) the Iowa District Court instructed the jury that it could infer the requisite mens rea from the petitioner's use of a dangerous weapon. *Id.* The petitioner contends that the Iowa courts' decisions regarding each of his five claims were contrary to, or involved an unreasonable application of, clearly established federal law, and that the Iowa courts' rulings were based on an unreasonable determination of the facts in the light of the evidence presented, which resulted in insufficient evidence to support his conviction.

## A. Ineffective Assistance of Counsel Claims

The petitioner claims that trial counsel violated his constitutional right to effective assistance of counsel.

### 1.    Applicable law

The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const. amend. VI. Furthermore, there is a constitutional right to effective assistance of counsel on direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Douglas v. California*, 372 U.S. 353, 357-58 (1963). An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Williams*, 529 U.S. at 390 (reasserting the *Strickland* standard). Although *Strickland* requires a showing of both deficient performance and prejudice, "a court deciding an ineffective assistance claim [need not] . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [petitioner] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*,

466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *See id.*; *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) ("We operate on the 'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (stating that courts must afford counsel broad latitude to make strategic and tactical choices). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id.*

In the context of reviewing petitions under 28 U.S.C. § 2254, the Supreme Court has set forth a "doubly" deferential standard for ineffective assistance claims. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (citations omitted)). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* Accordingly, the issue the court must decide "is not whether counsel's actions were

reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 2. Claims

#### a. Failure to object to prosecutorial misconduct

The petitioner argues that trial counsel was constitutionally ineffective because trial counsel failed to object to two instances of prosecutorial misconduct: (1) improper instruction of prospective jurors on the law during voir dire and (2) improper prejudicial statements concerning the petitioner that the prosecutor made during opening statements. *See* Petition (docket no. 1) at 5. With respect to former instance, the petitioner asserts that the prosecutor improperly told prospective jurors that there were two theories of first degree murder in Iowa—felony murder and premeditated murder—and improperly argued against the lesser offense of voluntary manslaughter. *See* Petitioner's Brief (docket no. 15) at 5-6; *see also* App'x, Trial Transcript (docket no. 10-10) at 9. Regarding the latter instance, the petitioner asserts that the prosecutor referred to the petitioner's bloody clothes and rhetorically asked questions regarding the location of the clothing that the petitioner wore on the night of the murder. *See* Petitioner's Brief (docket no. 15) at 5-7. Namely he asked: "Where are they? Why did he get rid of them?" *See* Petitioner's Brief (docket no. 15) at 5-7; *see also* App'x, Trial Transcript (docket no. 10-10) at 19. He asserts that such questions were improper, highly suggestive and likely to create a false inference. *See* Petitioner's Brief (docket no. 15) at 6-7.

Concerning the prosecutor's conduct during voir dire, the respondent points out that the petitioner does not maintain that the prosecutor explained the law incorrectly and argues that no violation of the petitioner's constitutional right to counsel occurred because no grounds for objecting to the prosecutor's statements existed. *See* Respondent's Brief (docket no. 16) at 14-16. Regarding the prosecutor's conduct during opening statements, the respondent maintains that no misconduct occurred. *Id.* at 17-18.

The Iowa Court of Appeals held that neither of the prosecutor's statements constituted misconduct under Iowa law. *See* App'x, Post-Conviction Relief Appeal Opinion (docket no. 10-16) at 6-7 (applying state law to conclude that the prosecutor's conduct fell within the wide latitude granted in voir dire examination). A federal habeas court cannot disturb a state court ruling based solely on state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *accord Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998). Therefore, the court must accept that neither of the prosecutor's statements were misconduct under Iowa law. Because neither of the prosecutor's statements were misconduct, the petitioner's trial counsel had no duty to object to them. *See Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994) (explaining that a claim of ineffective assistance of counsel fails when underlying claim is "rejected as meritless").

Further, the petitioner's trial counsel had no duty to object under federal law.[1] "[A] two-part test determines whether prosecutorial misconduct has occurred: first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." *United States v. White*, 241 F.3d 1015, 1023 (8th Cir. 2001). "Even if one or more of the comments was improper, reversal 'is appropriate only when [the court] determine[s] that the jury verdict reasonably could have been affected by the improper comment.'" *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010) (quoting *United States v. Peyro*, 786 F.2d 826, 831 (8th Cir. 1986)). If the petitioner cannot show that the prosecutor's comments deprived the petitioner of a fair trial, the court need not decide whether the comments were improper. *Id.* To determine whether the comments deprived the petitioner of a fair trial, the court considers three factors: the cumulative effect of the

_____

[1] The petitioner did not explicitly invoke the federal prosecutorial misconduct standard. The court addresses it out of an abundance of caution.

misconduct, the strength of the properly admitted evidence of the defendant's guilt and the curative actions taken. *See United States v. Beeks*, 224 F.3d 741, 745 (8th Cir. 2000).

The prosecutor's comments did not deprive the petitioner of a fair trial. Given the nature of the prosecutor's statements and the context in which she made them, the cumulative effect of the purported misconduct can only be characterized as negligible. The prosecutor's statements consisted of no more than a few sentences at the outset of trial and touched on relevant issues. *See* App'x, Trial Transcript (docket no. 10-10) at 9, 19. Indeed, the first statement simply indicated the type of murder trial prospective jurors would hear and the second statement consisted of rhetorical questions about the case that the State sought to prove. By contrast, the State properly introduced strong evidence of the petitioner's guilt. As the Iowa Court of Appeals explained, the State presented sufficient evidence to prove that the petitioner killed the decedent with specific intent and malice aforethought. *See* App'x, Direct Appeal Opinion (docket no. 10-7) at 4-5. Moreover, the petitioner testified under oath that he told several friends and a police officer that he had stabbed someone. *See* App'x, Trial Transcript (docket no. 10-3) at 147, 149-50.

Additionally, one of the purposes of voir dire is to assist counsel in exercising peremptory challenges. *See Mu'min v. Virginia*, 500 U.S. 415, 431 (1991). As such, trial counsel's decision not to object may be understood as a strategic decision whereby jurors' responses to the prosecutor's conduct would inform his peremptory challenges. Likewise, it is clear that the prosecutor's rhetorical questions during opening statements did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *See Parker v. Matthews*, ___ U.S. ___, ___, 132 S. Ct. 2148, 2154 (2012); *see also Arizona v. Washington*, 434 U.S. 497, 511 (1978) (refusing to second guess state court's determination with respect to propriety of opening statement). This is especially true because the Iowa District Court took curative steps by instructing the jury that it could not consider "[s]tatements, arguments, questions, and comments by the lawyers" as

evidence on which to base a verdict. *See* App'x, Jury Instructions (docket no. 17-1) at 8; *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (stating that "[a] jury is presumed to follow" the court's instructions).

Based on the law and the evidence in the record, the court concludes that the prosecutor's statements do not constitute misconduct under federal law. And, neither the statement made during voir dire nor the statement made during opening statements prejudiced the petitioner's defense. Therefore, the petitioner cannot demonstrate that trial counsel had a duty to object under either Iowa or federal law. Accordingly, the court shall deny the petition on this claim.

### b. *Failure to pursue a justification defense*

The petitioner argues that trial counsel was constitutionally ineffective for failing to pursue a justification defense. *See* Petition (docket no. 1) at 6. The petitioner asserts that his trial counsel failed an essential duty by withdrawing the notice of justification as a defense when such a defense was clearly in the petitioner's best interest. *See* Petitioner's Brief (docket no. 15) at 9. The petitioner argues that there was a strong basis for asserting self-defense and points to testimony that showed he was engaged in a "brawl style fight with multiple people" and was "being attacked" in the moments leading up to the stabbing. *Id*. Relatedly, the petitioner argues that his trial counsel breached an essential duty by failing to adequately prepare the petitioner to testify that the petitioner was defending himself during the fight in which the victim was stabbed. *Id*. The petitioner argues that trial counsel should have pursued a theory of self-defense in light of the evidence. *Id*.

In addition to claiming that trial counsel should have prepared him better to testify during trial, the petitioner argues that trial counsel did not adequately advise him about whether or not to take the stand. *Id*. at 9-10. The petitioner asserts that he gave no indication that he would be unwilling to take trial counsel's advice with respect to his choice to testify. *Id*. at 10. The petitioner argues that, despite trial counsel's "ethical

concerns when preparing clients for testimony," he still should have advised the petitioner that it may not be in his best interest to testify. *Id.*

Several facts are pertinent to this claim. After pleading not guilty, the petitioner's trial counsel filed a notice of intent to assert a justification defense. *See generally* App'x at 6-9. On March 7, 2007, the petitioner's trial counsel withdrew such notice. *See* App'x, Withdrawal of Notice of Self-Defense (docket no 10-1) at 9. During trial, the petitioner testified at trial and denied stabbing the victim. *See* App'x, Direct Appeal App'x (docket no. 10-3) at 154. During post-conviction proceedings in the Iowa District Court, the petitioner's trial counsel explained why he withdrew the notice:

> It's inconsistent with a general denial, 'I didn't do it.' When you claim self-defense, you are making an admission that you in fact are responsible for the fatal blow, but then the defense is you were justified in doing so. [Also] self-defense is a very hard sell to juries, especially in these types of situations. The fact that [the petitioner] leaves and returns, the fact that he's bringing a knife to [a] fistfight, the fact that there's multiple actors involved, it just wasn't viable for quite a number of reasons.

App'x, Post-Conviction Relief Trial Transcript (docket no. 10-11) at 125. The petitioner's trial counsel also testified that the petitioner was adamant that he did not stab anybody. *Id.* at 119-22. Moreover, the petitioner agreed with trial counsel's decision to withdraw the self-defense notice. *Id.*

The Iowa Court of Appeals held that "[p]ursuing a general denial and abandoning the issue of self-defense was a tactical decision of trial counsel and in conformity with [the petitioner's] own statement to [trial] counsel" that he had not stabbed the victim. *See* App'x, Post-Conviction Relief Appeal Opinion (docket no. 10-16) at 7. The court must defer to the Iowa Court of Appeals' determination that the petitioner's trial counsel provided adequate representation unless the petitioner can show that there is no reasonable argument that the Iowa Court of Appeals applied the *Strickland* standard correctly. *See* *Richter*, 562 U.S. at 105. The petitioner failed to make such showing. The

reasonableness of the Iowa Court of Appeals' decision is evident from the fact that the petitioner insisted on a general denial defense before trial and during his trial. *See* App'x, Post-Conviction Relief Trial Transcript (docket no. 10-11) at 118-25. It was only after the jury returned a guilty verdict that the petitioner suggested he may have stabbed the victim, but was justified in doing so. *Id.*

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 690-91). Given the petitioner's insistence that he did not stab the victim and the incompatibility between that position and a theory of self-defense, it was reasonable for the Iowa Court of Appeals to conclude that trial counsel's decision not to pursue self-defense was "strategy" and did not rise to constitutionally ineffective assistance. Hence, the Iowa Court of Appeals reasonably determined that the petitioner's trial counsel did not breach an essential duty under *Strickland*. *See* App'x, Post-Conviction Relief Appeal Opinion (docket no. 10-16) at 7.

Even if trial counsel had an essential duty to pursue a justification defense, the petitioner was not prejudiced by trial counsel's failure to do so.[2] Under Iowa law, "[a] person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force." Iowa Code § 704.3; *State v. Stallings*, 541 N.W.2d 855, 857 (Iowa 1995). The burden is on the State to prove beyond a reasonable doubt that justification did not exist. *See State v. Rubino*, 602 N.W.2d 558, 565 (Iowa 1999); *State v. Mayes*, 286 N.W.2d 387,

---

[2] Because the Iowa Court of Appeals concluded that the petitioner's trial counsel had no essential duty to pursue a justification defense, it did not reach the issue of prejudice. *See* App'x, Post-Conviction Relief Appeal Opinion (docket no. 10-16) at 7-8. The court does so out of an abundance of caution.

392 (Iowa 1979). The State can meet that burden by proving any of the following: (1) the defendant started or continued the incident which resulted in death, (2) an alternate course of action was available to the defendant, (3) the defendant did not believe he was in danger of death or serious injury and the use of force was not necessary to save his life, (4) the defendant did not have reasonable grounds for the belief or (5) the force used by the defendant was unreasonable. Iowa Code § 704.6; *Rubino*, 602 N.W.2d at 565; *State v. Coffman*, 562 N.W.2d 766, 768 (Iowa Ct. App. 1997).

The evidence indicates that the petitioner was very upset after being subjected to a racial slur by one of the partygoers. *See* App'x, Direct Appeal Opinion (docket no. 10-7) at 4. He left the party and returned with knives. *Id.* at 2. The petitioner began confronting partygoers and stabbed the victim who was trying to defuse the confrontation. *Id.* Based on that evidence, the State could have proved that the petitioner started the incident, the petitioner had an alternate course of action such as leaving or not returning to the party, the petitioner lacked reasonable grounds to believe his life was in danger and the petitioner did not respond reasonably to the decedent's attempted conciliation. Therefore, the petitioner cannot establish that a justification defense would have altered the outcome of his trial.

Regarding the allegation that trial counsel should have prepared him better to testify during trial and provided better advice as to whether he should or should not testify, it is clear that trial counsel advised the petitioner to tell the truth, notified him that he could expect questions about prior incriminating statements that he made and let the petitioner choose whether he wanted to testify. *See* App'x, (docket no. 10-11) at 122-24. Such advice and preparation was eminently reasonable in light of the petitioner's position prior to trial and during trial.

In sum, the Iowa Court of Appeals reasonably concluded that trial counsel did not breach an essential duty either by withdrawing the notice of justification as a defense or advising the petitioner with respect to his testimony. But even if an essential duty was

breached, the petitioner suffered no prejudice. Accordingly, the court shall deny the petition on this claim.

### c. Failure to make a sufficiently specific motion for judgment of acquittal

The petitioner argues that trial counsel breached an essential duty by failing to make a motion for judgment of acquittal that was sufficiently specific to preserve error. *See* Petitioner's Brief (docket no. 15) at 14-15. The petitioner argues that, as a result, the Iowa Court of Appeals declined to adjudicate the Iowa District Court's denial of the motion on the merits, which prejudiced him. *See* App'x, Direct Appeal Opinion (docket no. 10-7) at 3-4; *see also State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) (holding that to preserve error, the motion for judgment of acquittal must state the same insufficiency grounds raised in the appeal).

The Iowa Court of Appeals addressed this claim on direct appeal using the *Strickland* rubric. *See* App'x, Direct Appeal Opinion (docket no. 10-7) at 3-4. The Iowa Court of Appeals' analysis of whether the petitioner's trial counsel failed an essential duty turned on whether the petitioner's motion, if it had been properly made, would have merit. *Id*. The Iowa Court of Appeals concluded that the motion was without merit because there was sufficient evidence for a reasonable jury to conclude that the petitioner possessed the mens rea required for a first degree murder conviction. *Id*. at 4-5. The Iowa Court of Appeals made a reasonable determination of the facts in light of the evidence presented at trial. Numerous witnesses testified to the petitioner's return to the party with the intent to confront partygoers who directed a racial slur towards him. *Id*. The petitioner brought a knife with him, and the victim died as a result of being stabbed. *Id*. Whether this evidence is sufficient to satisfy the mens rea requirements of Iowa's first degree murder statute is a matter of state law. Having concluded that no unreasonable factual determinations were made, the court cannot second-guess the Iowa Court of Appeals' holding that a proper motion would have been without merit under Iowa law. *See Estelle*,

502 U.S. at 67-68; *accord Rose*, 423 U.S. at 21; *Bounds*, 151 F.3d at 1118.  Stated differently, the court is unable to find that the Iowa Court of Appeals unreasonably concluded that a reasonable probability that the judgment of acquittal would have been granted but for trial counsel's error did not exist.  Given the reasonableness of the Iowa Court of Appeals' decision, the court shall deny the petition on this claim.[3]

### B.  Due Process Claims

The petitioner maintains that the Iowa District Court abridged his due process rights under the Fourteenth Amendment in two ways: overruling a hearsay objection and instructing the jury.

### 1.  Overruling of hearsay objection

The petitioner claims that the Iowa District Court erred in overruling a hearsay objection during trial.  *See* Petition (docket no. 1) at 8.  Specifically, the petitioner argues that the Iowa District Court wrongly admitted hearsay evidence from witness David O'Connell, who testified that the victim told the petitioner "[a]ll right, hit me," just prior to the fatal blow.  *See* Petitioner's Brief (docket no. 15) at 12-13.  The petitioner argues that admission of the hearsay statement was prejudicial error and a violation of his right to due process occurred because of the Iowa District Court's failure to afford him protection under the rules of evidence.  *Id.* at 13-14.

In response, the respondent argues that the petitioner's hearsay claim is not an issue of federal law and is not subject to federal habeas review.  *See* Respondent's Brief (docket no. 16) at 24.  The respondent argues that the petitioner did not exhaust his remedies in the state courts and, consequently, the petitioner's due process claim is procedurally defaulted.  *Id.* at 25.

---

[3] The court notes that the petitioner also asserted in post-conviction proceedings that trial counsel should have made a more specific motion for judgment of acquittal to properly preserve error regarding causation, but the Iowa Court of Appeals rejected such assertion.  *See* App'x, Post-Conviction Relief Appeal Opinion (docket no 10-16) at 8.

"In the habeas context, '[r]ules of evidence and trial procedure are usually matters of state law. A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process.'" *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006) (quoting *Adail v. Wyrick*, 711 F.2d 99, 102 (8th Cir. 1983)). In other words, the court "will not re-examine whether evidence was properly admitted under state law. Rather, [the court considers] only the question whether [the petitioner's] conviction was obtained in violation of the United States Constitution. Admission of [a] hearsay statement [is] violative of [the petitioner's] due process rights only if the court's error in admitting the evidence was so obvious that it 'fatally infected the trial and rendered it fundamentally unfair.'" *Oliver v. Wood*, 96 F.3d 1106, 1107 (8th Cir. 1996) (citations omitted).

On direct appeal, the petitioner argued that the Iowa District Court improperly applied the rules of evidence when it admitted seven hearsay statements, including the one at issue here. *See* App'x, Petitioner's Direct Appeal Brief (docket no. 10-4) at 22. The Iowa Court of Appeals concluded that the admission of the hearsay did not result in prejudice because the statement was cumulative of other evidence that indicated the petitioner and victim were fighting. *See* App'x, Direct Appeal Opinion (docket no. 10-7) at 7. The petitioner sought further review of this issue, but the Iowa Supreme Court denied his application. *See* App'x, Direct Appeal Application for Further Review (docket no. 10-8) at 3-4; App'x, Order Denying Further Review (docket no. 10-9). The court is unable to review a state law issue, that is, reexamine the admissibility of the hearsay statements under Iowa's rules of evidence. *See Estelle*, 502 U.S. at 67-68; *accord Rose,* 423 U.S. at 21; *Bounds*, 151 F.3d at 1118.

Although a reexamination of state law evidentiary issues is not appropriate, the petitioner argues that his evidentiary argument implicates his right to federal due process. The petitioner argues that, by overruling trial counsel's hearsay objection to O'Connell's testimony, the Iowa District Court violated his federal due process rights. *See* Petitioner's

Brief (docket no. 15) at 14. But, the petitioner did not raise the matter of any hearsay violating his constitutional right to due process in either appellate proceedings or post-conviction proceedings. Federal habeas courts can only consider federal claims that have been exhausted through "one complete round" of state review. *See Boerckel*, 526 U.S. at 845. This claim was not exhausted through one complete round of review in the Iowa courts. Moreover, the three-year period following direct appeal during which the petitioner could have filed for post-conviction relief on this claim has now expired. *See* Iowa Code § 822.3. The petitioner's direct appeal concluded on March 24, 2010. *See* App'x, Procedendo (docket no. 10-11) at 96. The petitioner filed the brief in which he first raised this claim on October 21, 2014. *See* Petitioner's Brief (docket no. 15) at 20. Because he missed the statutory deadline, the petitioner's due process hearsay claim is procedurally defaulted on an independent and adequate state law ground. *See Gray,* 518 U.S. at 162; *Welch*, 616 F.3d at 760.

Further, no review of the petitioner's claim is appropriate because the petitioner neither asserts cause for the default nor demonstrates that the court's refusal to consider his contentions regarding due process would result in a miscarriage of justice. As the Iowa Court of Appeals noted, sufficient evidence supported the petitioner's conviction. *See* App'x, Direct Appeal Opinion (docket no. 10-7) at 3-4. And, even if the merits of the petitioner's claim are considered, it is clear that the admission of O'Connell's testimony neither resulted in an unfair proceeding nor undermined confidence in the outcome of the petitioner's trial. Accordingly, the court shall deny the petition on this claim.

### 2. *"Dangerous weapon" jury instructions*

The petitioner argues that jury instruction numbers 19, 20, 20(a) and 21, which pertain to permissive inferences that may be drawn from the petitioner's use of a dangerous weapon, violated his constitutional right to due process because they relieved the State of its burden of proving all the elements of first degree murder beyond a reasonable doubt. *See* Petitioner's Brief (docket no. 15) at 16-18. The petitioner asserts that a reasonable

juror could read these jury instructions to invoke mandatory rather than permissive inferences. *Id.* The respondent argues that the petitioner failed to exhaust this claim and, consequently, it is procedurally defaulted. *See* Respondent's Brief (docket no. 16) at 32-33.

The jury instructions at issue are as follows:

Instruction No. 15. The state must prove all of the following elements of Murder in the First Degree: (1) on or about the 19th day of August, 2006, the defendant stabbed Treye Blythe; (2) Treye Blythe died as a result of being stabbed; (3) the defendant acted with malice aforethought; (4) the defendant acted willfully, deliberately, premeditatedly and with specific intent to kill Treye Blythe. If the State has proved all of these elements, the defendant is guilty of Murder in the First Degree. If the State has failed to prove any one of these elements, the defendant is not guilty of Murder in the First Degree and you will consider the lesser included offense of Murder in the Second Degree as explained in Instruction No. 23.

Instruction No. 19. "Specific Intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind. Because determining the defendant's specific intent requires you to decide what he was thinking when the act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. *You may, but are not required to, conclude* a person intends the natural results of his acts. Specific intent does not have to exist for any particular length of time. It is sufficient if it exists at any time before the act.

Instruction No. 20. If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, *you may, but are not required to, infer* that the weapon was used with malice, premeditation, and specific intent to kill.

Instruction No. 20(a). Malice aforethought *may be inferred* from the defendant's use of a dangerous weapon.

Instruction No. 21. A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury and, when used in its designed manner, is capable of inflicting death. It is also any sort of instrument or device which is actually used in such a way as to indicate the user intended to inflict death or serious injury and, when so used, is capable of inflicting death.

App'x, Jury Instructions (docket no. 17-1) at 16, 20-23 (emphasis added).

In his pro se brief on direct appeal, the petitioner did in fact claim that the ability to infer malice from the use of a dangerous weapon violated due process. *See* App'x, Petitioner's Pro Se Direct Appeal Brief (docket no. 10-5) at 9-10. The Iowa Court of Appeals did not explicitly address the petitioner's pro se due process claim. *See generally* App'x, Direct Appeal Opinion (docket no. 10-7). However, it cited to caselaw permitting the inference of malice that underlies the petitioner's claim. *Id.* (citing *State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001)). Despite raising the issue in his pro se brief to the Iowa Court of Appeals, the petitioner did not seek further review of this issue. *See generally* App'x, Direct Appeal Application for Further Review (docket no. 10-8). Although the Iowa Court of Appeals addressed the jury instructions during the post-conviction relief appeal, it addressed only whether the instructions[4] properly conveyed the law of causation. *See* App'x, Post-Conviction Relief Appeal Opinion (docket no. 10-16) at 8-9. The Iowa courts never adjudicated the petitioner's contention that the instructions impermissibly relieved the State of its burden of proving all the elements of first degree murder beyond a reasonable doubt. Consequently, the petitioner failed to exhaust this claim, and it is

_____

[4] Instruction 16 in particular: "Concerning Element No. 2 of Instructions Nos. 15, 23, 26 and 28, the wound inflicted by the defendant resulted in the death of Treye Blythe if it caused or directly contributed to Treye Blythe's death." App'x, Jury Instructions (docket no. 17-1) at 17.

procedurally defaulted. *See Welch*, 616 F.3d at 759. Further, no review of the petitioner's claim is necessary because the petitioner has neither stated any cause for his failure to have the highest court review his claim nor has he alleged that the court's refusal to consider this claim would result in a miscarriage of justice.

Moreover, even if the petitioner had exhausted this claim, it would fail on the merits. An "entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic [fact] . . . affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Cnty. Court of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 157 (1979). Jury instruction numbers 19, 20, 20(a) and 21 were entirely permissive. Each uses the word "may" or the phrase "you may, but are not required to, conclude. . . ." App'x, Jury Instructions (docket no. 17-1) at 16, 20-23. Moreover in the petitioner's case, the jury could rationally make the inference permitted by the instructions because it is rational to say that a person who uses a knife to stab someone in the chest does so with malice and specific intent to kill. This is especially true because, under Iowa law, deliberation, premeditation, specific intent and malice aforethought need not exist for any particular length of time. *See id.* at 18-20.

The petitioner cannot prevail on a due process claim stemming from the "dangerous weapon" jury instructions. Accordingly, the court shall deny the petition on this claim.

### VI. CERTIFICATE OF APPEALABILITY

In a 28 U.S.C. § 2254 proceeding before a district judge, "the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." 28 U.S.C. § 2253(a). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . ." 28 U.S.C. § 2253(c)(1). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman*

*v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam); *Carter v. Hopkins*, 151 F.3d 872, 874 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, a petitioner must demonstrate that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569 (citing *Flieger*, 16 F.3d at 882–83); *see also Miller-El*, 537 U.S. at 335-36 (reiterating the applicable standard).

Courts can reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the petitioner failed to make the requisite "substantial showing" with respect to the claims that he raised in the petition. Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court shall deny a certificate of appealability under 28 U.S.C. § 2253. If the petitioner desires further review of his 28 U.S.C. § 2254 petition for a writ of habeas corpus, he may request issuance of the

certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## VII. CONCLUSION

The court finds that the petitioner is not entitled to relief under 28 U.S.C. § 2254. The petitioner failed to exhaust some of his claims, the petitioner failed to assert federal claims, and the Iowa courts' adjudication of the petitioner's claims did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the petition is **DENIED**. The clerk of court is **DIRECTED** to enter judgment in favor of the respondent, John Fayram, and against the petitioner, Joseph Leo Johnson. In addition, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 7th day of November, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA